## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSEPH N. WARD II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 14-cv-0509-MJR-SCW |
| JOHN HOFFMAN, | ) | |
| TIMOTHY MORRIS, | ) | |
| and ADAM TOPE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### A.    INTRODUCTION

Joseph Ward (Plaintiff) filed this suit on May 5, 2014, under 42 U.S.C. 1983, claiming that correctional officials used excessive force on him during a cell extraction. Plaintiff's original complaint was dismissed for failure to state a claim.  He filed an amended complaint on June 27, 2014 (Doc. 10).  This Court's August 5, 2014 Order on threshold review (Doc. 11) found that the amended complaint stated two cognizable claims against Defendants Hoffman, Morris, and Tope – one for their use of excessive force and another for their failure to protect Defendant from the excessive force. Now before the Court is Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Doc. 34).

Defendants filed the motion and supporting brief on December 29, 2014, arguing that Plaintiff's claims are barred, because he failed to exhaust his administrative

remedies before filing suit.  Plaintiff responded on February 3, 2015 (Doc. 46).  For the reasons set forth below, the Court will grant Defendants' motion.

### B. APPLICABLE LEGAL STANDARDS

→ *Summary Judgment Standard*

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **Fed. R. Civ. P. 56(a).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.,* **422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**  After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)(2)).**

A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't,* **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).**  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.**

To survive summary judgment, the nonmovant must present more than a "mere scintilla" of evidence showing the existence of a genuine issue of material fact. *Chaib v. Indiana*, **744 F.3d 974, 981 (7th Cir.),** *cert. denied*, **135 S. Ct. 159 (2014).** *See also Zuppardi v. Wal-Mart Stores, Inc.*, **770 F.3d 644, 650 (7th Cir. 2014).** Stated another way, a scintilla of evidence supporting the nonmovant's position is not enough; "there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, **711 F.3d 794, 798 (7th Cir. 2013).**

On summary judgment, the court considers the facts in the light most favorable to the non-movant. *Srail v. Village of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences, and resolves doubts, in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Summary judgment is "not an appropriate occasion for weighing the evidence" and should not be granted if the evidence before the court supports alternate inferences. *Dowden v. Polymer Raymond, Inc.*, **966 F.2d 1206, 1207-08 (7th Cir. 1992).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004),** *cert. denied*, **546 U.S. 1032 (2005).**

→ *Exhaustion under the PLRA*

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a) (2013).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock*, **549 U.S. 199, 223 (2007); *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).**[1]

The Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) ('This circuit has taken a strict compliance approach to exhaustion").** "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006); *Woodford v. Ngo*,**

---

[1]    Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* **Fed. R. Civ. P. 12(d).**

**548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, **534 U.S. 516, 524 (2002).** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001).**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. *Perez*, **182 F.3d at 535.**

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).** The Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41 (7th Cir. 2008).** Where failure to exhaust administrative remedies has been raised as an affirmative defense (i.e., exhaustion is contested), the district court should follow this recommended sequence (*id.*, **544 F.3d at 742**):

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be

permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

Here, Defendants raised the affirmative defense of exhaustion in their answer (*see* Doc. 19, p. 10).

The PLRA's exhaustion requirement is dependent upon the procedures established by the state in which the prison is located. ***Jones*, 549 U.S. at 218.**   Plaintiff was confined within the Illinois Department of Corrections (IDOC).

→     *Exhaustion under Illinois Law*

As an IDOC inmate, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims.  **20 Ill. Admin. Code 504.800, *et seq*.**  The grievance procedures first require inmates to speak with their Counselor about the issue or problem.  **20 Ill. Admin. Code 504.810(a).**  If the Counselor does not resolve the issue, the inmate must file a grievance within sixty days of the events or occurrence with the Grievance Officer. ***Id.***

The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board (ARB).

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance.  To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.  **20 Ill. Admin. Code 504.840(a).**  If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.  **20 Ill. Admin. Code 504.840(b).**  Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.  **20 Ill. Admin. Code 504.850(g).**  A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance *directly* with the ARB.  **20 Ill. Adm. Code § 504.870.**  Those circumstances include grievances addressing (1) placement in protective custody, (2) involuntary administration of psychotropic medication, (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides, and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution.  ***Id.***

### C.   <u>ANALYSIS</u>

Analysis begins with a review of Plaintiff's grievances.  When Plaintiff filed this

lawsuit, he was an inmate incarcerated at Stateville Correctional Center (Doc. 10). However, the events leading to this suit stem from an incident that occurred while Plaintiff was in his cell at Menard Correctional Center on June 10, 2012 (*id.*).  Plaintiff and his cell mate were arguing loudly when Defendants approached the cell and ordered both men into handcuffs (*id*).  Plaintiff alleges that he complied with the order. Due to being short of breath, Plaintiff reached for his asthma inhaler, and one of the Defendants questioned what he was reaching for (*id.*)  After his cellmate was removed from the cell, Plaintiff alleges that Defendant Hoffman began to verbally abuse Plaintiff and ordered him to stop moving (*id.*).   According to Defendant Hoffman, Plaintiff refused to surrender his handcuffs or move to the front of the cell when ordered to do so and then tried to swing at Hoffman with a closed fist (*see e*xhibit to summary judgment memorandum, Doc. 35-1, p. 15).

Plaintiff alleges that Defendant Hoffman sprayed him with pepper spray and assaulted him (Doc. 10). According to Plaintiff, the alleged assault by Defendant Hoffman left Plaintiff unconscious (*id.*).  Plaintiff was then turned over to the healthcare unit (Doc. 35-1, p. 15).  Defendant Hoffman issued Plaintiff a disciplinary report for assaulting a correctional officer and disobeying a direct order (Doc. 35-1, pp. 15-16).

Plaintiff was later transferred to the healthcare unit at Pontiac Correctional Center.  After several days in the healthcare unit, Plaintiff was transferred to Pontiac's North Cellhouse on June 21, 2012 (Doc. 10).  Later that day, Plaintiff was called before the Adjustment Committee for a hearing on the disciplinary report he received from Defendant Hoffman (Doc. 35-1, p. 17).

On June 28, 2012, Plaintiff filed a grievance appealing the Adjustment Committee's ruling from the June 21, 2012 hearing (Doc. 35-1, p. 7-8).   Plaintiff's signature is dated July 5, 2012, and the grievance is stamped indicating that the grievance officer received it on July 11, 2012 (Doc. 35-1, p. 7).   In the grievance, Plaintiff alleges that the Adjustment Committee committed procedural violations by not allowing him to investigate the matter and call witnesses (Doc. 35-1, p. 7-8).   The grievance officer reviewed the grievance on August 17, 2012, and the CAO signed off on it on August 20, 2012.  (Doc. 35-1, p. 6).  The ARB received the grievance on September 4, 2012 (Doc. 35-1, p. 5) and denied the grievance on April 29, 2013 (Doc. 35-1, p. 5).

On August 28, 2012, Plaintiff filed an additional grievance alleging that Defendant Hoffman used excessive force during the June 10, 2012 incident (Doc. 35-1, p. 11-12).  This grievance made claims that the disciplinary report Plaintiff received as a result of the June 10 incident was retaliation for an earlier grievance Plaintiff had filed against non-parties Alssapp and Yates (Doc. 35-1, p. 11).   Plaintiff also alleged that "Hoffman became verbally obnoxious then combative for no good cause," and that Hoffman pepper sprayed and manhandled Plaintiff until he was unconscious (Doc. 35-1, p. 12).

The ARB received both grievances on September 4, 2012 (Doc. 35-1, p. 7-8; Doc. 35-1, p. 11-12).  Plaintiff drafted another grievance with substantially similar allegations that was dated September 12, 2012.  The ARB received it January 9, 2013 (Doc. 35-1, p. 13).

On April 29, 2013, the ARB found that Plaintiff's claims against the Adjustment Committee were not substantiated. (Doc. 35-1, p. 5).   The ARB did not consider Plaintiff's August 28, 2012 or September 12, 2012 grievances, because they were received more than 60 days after the June 10 incident in violation of 20 Ill. Admin. Code 504.810 (Doc. 35-1, p. 5).

Here, the admissible evidence considered as a whole demonstrates that Plaintiff failed to exhaust his administrative remedies prior to bringing this suit.  Plaintiff filed two separate grievances regarding the June 10, 2012 incident.  Although the June 28, 2012 grievance alleges that the Adjustment Committee violated Plaintiff's due process, it mentions nothing about any of the named Defendants herein (Doc. 35-1, p. 3). Because these Defendants were not mentioned by name or described, neither the Adjustment Committee nor the ARB was able to review and assess Defendants' conduct.

The August 28, 2012 and subsequent September 12, 2012 grievance do allege that Defendant Hoffman used excessive force on June 10, 2012 (Doc. 35-1, pp. 11-12).  Illinois law, however, requires that a prisoner file a grievance within sixty days of discovery of the dispute. **20 Ill. Admin. Code 504.810**.  Plaintiff's grievances were filed *more* than sixty days after the incident.  Therefore, the ARB did not consider Plaintiff's August 28, 2012 or September 12, 2012 grievance when reviewing the events of June 10, 2012 (Doc. 35-1, p. 5).  Additionally, Plaintiff's August 28, 2012 grievance mentions nothing about Defendants Tope or Morris (Doc. 35-1, p. 3).  It would not be sufficient to exhaust as to those Defendants in any case.

Plaintiff argues that Sherri Benton at the ARB should have considered the August and September grievances because of his belief that the cell shakedown was retaliation for the grievance he wrote against Alssapp and Yates. Plaintiff reasons that since he already had a grievance pending for Alssapp and Yates' conduct, the subsequent grievances were related and should have been considered timely filed. However, there is no support in the Illinois Administrative Code for this interpretation of the requirements. Plaintiff failed to follow the proper procedure, and thus his administrative remedies were not exhausted. *See Pavey*, **663 F.3d at 903**.

### D.   CONCLUSION

Plaintiff failed to fully exhaust his administrative remedies before filing suit in federal court. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 34) and, as required by *Pavey*, **DISMISSES** this case **without prejudice**. This dismissal disposes of all the claims of the case. The Clerk of the Court shall enter judgment in favor of Defendants Hoffman, Tope and Morris.

IT IS SO ORDERED.

DATED June 23, 2015.

s/ *Michael J. Reagan*
Michael J. Reagan
Chief Judge
United States District Court